IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIC S. MONTALVO,<br><br>  *Plaintiff*,<br><br>v.<br><br>WILEY REIN LLP,<br>2050 M Street NW,<br>Washington, DC 20036,<br><br>  *Defendant*. | **Case: 1:26-cv-00016 JURY DEMAND**<br>**Assigned To : Friedrich, Dabney L.**<br>**Assign. Date : 1/5/2026**<br>**Description: Pro Se Gen. Civ. (F-DECK)**<br><br>Civil Action No. _____<br><br>RECEIVED<br>Mailroom<br><br>JAN - 5 2026<br><br>Angela D. Caesar, Clerk of Court<br>U.S. District Court, District of Columbia |

## COMPLAINT

**(Sherman Act; District of Columbia Antitrust Act; District of Columbia Common Law; Compensatory and Treble Damages; Costs)**

### JURY TRIAL DEMANDED

Plaintiff Eric S. Montalvo ("Plaintiff"), appearing *pro se* pursuant to 28 U.S.C. § 1654, alleges the following based on personal knowledge and information and belief:

### INTRODUCTION

1. This action arises from Defendant Wiley Rein LLP's misuse of judicial and quasi-judicial processes to impose economic pressure on Plaintiff personally, notwithstanding the absence of any personal guaranty, misrepresentation, or factual basis for individual liability under District of Columbia law.

2. This case is not a dispute over whether rent was owed under a commercial lease. Plaintiff does not deny that a business obligation existed, nor does Plaintiff seek to avoid lawful adjudication of any bona fide claim against the proper corporate entity. Rather, this case concerns

1

how Defendant responded once it was placed on notice that immediate lump-sum payment was not feasible and that Plaintiff bore no personal liability under District of Columbia law.

3. Beginning in or about 2023, Defendant approved and accepted modified payment arrangements and partial payments, demonstrating its understanding that structured repayment was feasible. Over the ensuing months, Plaintiff repeatedly proposed commercially reasonable repayment plans, including installment payments with interest sufficient to satisfy the full obligation. Plaintiff disclosed financial distress, explained cash-flow limitations, and advised Defendant of efforts to secure external financing to meet Defendant's demand for payment in full.

4. Defendant rejected every proposed repayment structure without counteroffer. When mediation was convened, Defendant appeared without intent to negotiate, reiterated demands known to be infeasible, and used the mediation process to extract further financial disclosures and increase Plaintiff's litigation burden. Plaintiff advised that absent a workable resolution, bankruptcy proceedings would follow. Rather than engage in resolution, Defendant escalated litigation activity.

5. Critically, Defendant expanded its litigation to assert claims against Plaintiff individually, despite knowing that Plaintiff executed no personal guaranty, made no misrepresentation, and engaged in no conduct supporting veil-piercing or fraud under District of Columbia law. At the same time, Defendant knowingly declined to assert claims against another equity partner holding a substantial ownership interest. This selective personal targeting occurred after repeated notice of the absence of any factual or legal basis for individual liability.

6. Defendant's conduct did not consist of a single, isolated lawsuit pursued to judgment. Instead, from 2023 through the present, Defendant pursued a course of conduct spanning multiple judicial and quasi-judicial processes, including litigation, mediation, discovery demands, and

parallel proceedings, escalating pressure after receiving notice that adjudication would not yield the personal liability Defendant sought. Taken together, Defendant's actions plausibly reflect use of legal process as a mechanism of economic coercion, rather than a good-faith effort to obtain lawful relief.

7. Plaintiff does not ask this Court to relitigate the merits of the underlying lease dispute or to interfere with any interlocutory rulings entered elsewhere. Plaintiff challenges Defendant's use of litigation itself as a weapon, directed at Plaintiff personally, after Defendant knew that no lawful basis existed for such claims.

8. Defendant's conduct plausibly falls within the sham-litigation exception to Noerr-Pennington immunity recognized in *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993), *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972), and *Waugh Chapel South, LLC v. UFCW Local 27*, 728 F.3d 354 (4th Cir. 2013), and independently constitutes abuse of process and tortious interference under District of Columbia law.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1337.

10. This Court has supplemental jurisdiction under 28 U.S.C. § 1367.

11. Venue is proper under 28 U.S.C. § 1391(b).

12. This Court has personal jurisdiction over Defendant, which is headquartered in the District of Columbia and engaged in the conduct alleged herein in this District.

## PARTIES

13. Plaintiff Eric S. Montalvo is an individual residing in California.

14. Defendant Wiley Rein LLP is a law firm headquartered in Washington, D.C.

## RELEVANT TIMEFRAME

15. From in or about 2023 through the present, Defendant engaged in the course of conduct alleged herein.

## FACTUAL ALLEGATIONS

### A. No Personal Guaranty; No Fraud

16. The lease at issue was entered into by a professional entity. Plaintiff did not execute a personal guaranty.

17. Plaintiff made no false statements, concealed no material facts, and engaged in no diversion or misuse of funds.

18. Defendant nevertheless asserted claims against Plaintiff individually based on conclusory alter-ego and fraud allegations untethered to any specific misrepresentation or wrongful act.

### B. Rejection of Commercially Reasonable Resolution and Escalation After Notice

19. Defendant approved and accepted a prior payment modification and partial payments, demonstrating knowledge that structured repayment was feasible.

20. Plaintiff repeatedly proposed commercially reasonable repayment structures, including installment plans with interest sufficient to satisfy the obligation.

21. Defendant rejected each proposal without counteroffer, notwithstanding repeated disclosures of financial distress.

22. Plaintiff advised Defendant that efforts to secure external financing were unsuccessful based on disclosed financial standing. These facts were communicated directly and through mediation.

## C. Mediation Used as a Cost-Imposition Tool

23. Defendant participated in mediation without intent to negotiate, reiterated infeasible demands, and used the process to increase Plaintiff's litigation burden.

24. After Plaintiff advised that absent a workable resolution insolvency proceedings were likely, Defendant escalated litigation rather than engage in settlement.

## D. Selective Personal Targeting

25. Defendant asserted claims against Plaintiff individually despite knowing there was no guaranty, fraud, or veil-piercing basis.

26. Defendant knowingly declined to assert claims against another substantial equity partner, evidencing selective enforcement to maximize coercive leverage.

## E. Pattern of Process Abuse Across Multiple Proceedings

27. Defendant pursued a course of conduct spanning litigation, mediation, discovery demands, and parallel proceedings.

28. Taken together, these actions plausibly reflect petitioning activity pursued without regard to adjudicative outcome and in a manner consistent with a policy of economic coercion rather than adjudication.

## F. Escalation of Cost-Imposing Litigation Conduct

29. Defendant scheduled depositions during a holiday period and withdrew them only after medical objections were raised.

30. Defendant's conduct reflected use of litigation process as a cost-imposition mechanism.

## G. Competitive Context and Foreseeable Harm

31. Plaintiff operates a law practice competing in overlapping federal-practice markets.

32. Defendant is a substantially larger firm employing hundreds of attorneys and staff with materially greater litigation resources.

33. Defendant knew or should have known its conduct would impair Plaintiff's ability to operate and compete.

34. Plaintiff asserts no claims on behalf of the LLP, which is referenced solely for context.

### H. Underlying Complaint Attached for Context Only

35. Plaintiff attaches the underlying complaint solely to show the nature and scope of Defendant's litigation conduct, and not for the truth of the allegations, many of which Plaintiff disputes.

### I. Noerr-Pennington Does Not Apply

36. Even assuming a colorable claim at inception, no reasonable litigant could expect success on claims against Plaintiff individually after notice of the absence of guaranty, fraud, or veil-piercing facts.

37. Under *California Motor Transport* and *Waugh Chapel*, a pattern of coercive use of process across multiple proceedings may fall outside First Amendment protection.

38. Plaintiff does not seek review, reversal, or interference with any interlocutory ruling entered in the underlying action. This action challenges Defendant's use of process, including continued prosecution and settlement conduct, as separate and independent wrongful acts.

## CLAIMS FOR RELIEF

### COUNT I

### SHERMAN ACT, 15 U.S.C. §§ 1–2; NOERR-PENNINGTON EXCEPTION

39. Plaintiff incorporates paragraphs 1–38.

40. Defendant engaged in petitioning activity not genuinely aimed at obtaining a favorable judicial outcome but instead aimed at imposing economic pressure through misuse of litigation and related processes directed at Plaintiff individually.

41. Defendant's conduct, as alleged, plausibly falls within the sham-litigation exception to Noerr-Pennington immunity and caused antitrust injury to Plaintiff.

42. Defendant's sham litigation conduct constituted exclusionary conduct and improper use of governmental process sufficient to state a claim under Sections 1 and 2 of the Sherman Act.

## COUNT II

## DISTRICT OF COLUMBIA ANTITRUST ACT

*(D.C. Code §§ 28-4502, 28-4503)*

43. Plaintiff incorporates paragraphs 1–42.

44. Defendant employed improper means to restrain competition and impair Plaintiff's ability to compete.

45. Defendant knowingly employed improper means, including sham petitioning activity and abuse of judicial and quasi-judicial processes, to impair Plaintiff's ability to operate and compete in those markets.

46. Defendant's conduct constituted an unlawful restraint of trade and an attempt to maintain or expand market power through improper means, in violation of the District of Columbia Antitrust Act.

47. Plaintiff suffered antitrust injury in the District of Columbia, including lost business opportunities, increased operating costs, and diminished ability to compete. Such injuries flow from conduct that reduced Plaintiff's ability to compete on the merits and were of the type the antitrust laws were intended to prevent.

## COUNT III

## ABUSE OF PROCESS

*(District of Columbia Common Law)*

48. Plaintiff incorporates paragraphs 1–47.

49. Defendant employed legal and quasi-legal processes for purposes other than those for which such processes were designed. After initiating process, Defendant willfully engaged in acts intended to increase cost and economic pressure rather than to secure adjudication on the merits, including escalating litigation to coerce payment after rejecting commercially reasonable avenues for repayment.

50. Defendant's conduct went beyond pursuit of adjudication and employed litigation and mediation as instruments of economic pressure, including escalation of personal claims absent a guaranty or fraud.

51. Plaintiff suffered damages as a direct and proximate result.

## COUNT IV

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

*(District of Columbia Common Law)*

52. Plaintiff incorporates paragraphs 1–51.

53. Plaintiff had valid and ongoing business expectancies.

54. Defendant knew of those expectancies and intentionally interfered with them through improper means, including abuse of process and sham litigation conduct.

55. Plaintiff suffered damages as a result.

## DAMAGES

56. Plaintiff has suffered compensatory damages, including legal expenses, lost economic opportunity, reputational harm, and emotional distress.

## JURY DEMAND

a. Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

57. The Plaintiff requests that the Court grant the following relief to pursuant to Section 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1–2, and the District of Columbia Antitrust Act, D.C. Code §§ 28-4502, 28-4503, and 28-4508:

1. Compensatory damages;
2. Treble damages where applicable;
3. Injunctive relief prohibiting further abusive litigation conduct directed at Plaintiff individually;
4. Costs and relief as permitted by law;
5. Such other relief as the Court deems just.

Dated: December 31, 2025

Respectfully submitted,

Eric S. Montalvo
*Pro se*
801 17th Street NW,
STE 250
Washington, D.C. 20006